We'll turn to 23-4068, Strawberry Water Users Association v. United States. Counsel. Judge Hartz, thank you. Quinton Rhodes on behalf of the appellant, Strawberry Water Users Association. In this case, we think that there are three principal reasons why the district court fell into error in ruling that it didn't have jurisdiction, subject matter jurisdiction over the matter. The first reason is the U.S. Supreme Court's ruling in Rainier. The second reason is that the wild land-urban interface has, is private property, at least the urban portion of that. And so the Forest Service assertion of jurisdiction and management of that private property is not authorized by Congress. The third reason we think that the discretionary function doesn't apply in this case is that the Forest Service decided to proceed without consultation with NEPA. In other words, it didn't apply NEPA or misapply it and abuse its discretion. It just pretended or acted as if NEPA didn't exist. We don't think it has discretion to do that. Counsel, on your first issue, do we need to consider the Rainier argument? Did we resolve that exact argument in Knezevich, which you argued? Your Honor, I don't believe so. In Knezevich, there's some pretty important factual distinctions between Rainier and Knezevich. For example, in Knezevich, there's a shortage of resources. There wasn't an effort to control the fire. In Rainier, once the fire was controlled, they dispersed the resources and kept on a skeleton crew. And then after a few days or weeks, they had an unexpected wind event and the fire exploded. That's almost exactly what happened. Yeah, but the whole point of Knezevich was Rainier didn't talk about the discretionary function exception. Well, the facts are different in the sense that... But the facts are irrelevant. If the Supreme Court doesn't address the legal issue, you're relying on that court decision. Well, the way we read it, it did, in the sense that it says that none of the exceptions apply. It says that none of them are relevant here. And the legal argument was that federal firefighters can't be held liable under the federal TORC Claims Act. And the court said specifically, none of these exceptions are relevant here. That's the court's words. None of these exceptions? I'll quote from it, Your Honor. Thank you. It said, the TORC Claims Act, and this is on page 318. The TORC Claims Act makes the United States liable, paren, with certain exceptions which are not relevant here, closed paren, for the negligence of its employees. And so one of those exceptions is the discretionary function exception. And so that's how it addressed it. And the policy issue is the same in the sense, as it is in this case, in the sense that, well, we need to give the discretion to federal firefighters. And if they make a mistake, we shouldn't hold them liable. But Justice Black in Rainier put his finger on the fairness of allowing for those mistakes to fall on a few people. And he discusses at page 320 of the U.S. report that the Congress made the determination that the nation as a whole benefits from the work of federal firefighters, generally speaking. And if they make a mistake, tortiously harm someone, then the nation as a whole should bear that cost. And it shouldn't fall on one or a small number of people who are either made destitute or horribly injured to bear the cost of that mistake. What was the mistake here? What do you say the Forest Service should have done once the fire started? Well, they had two of these small fires that they had the resources and the capability and the opportunity to just put them out. And instead, they decided we're going to use these fires for resource benefits in the wildland urban interface. And so they're making a decision to use this fire, wildfire use, to reduce hazardous fuels on their property and on the urban aspect of the interface. So the challenged action, for purposes of the discretionary function exception, is the decision in how to handle these two particular fires. Is that right? Yes, and making that decision that it's going to use these for these resource benefits. Why is the national plan and the national strategy even relevant then? It informs the decision making of the local decision makers. I don't understand that. The challenged action is either a discretionary decision that violates the federal statute or it doesn't. How does the national plan and the national strategy inform our inquiry of whether the challenged action under Konezovich violates the federal statute or not? It's the expression of the leader's intent. So you have the strategy and then the plan. Then you have the Forest Service chief's expression of how we're going to execute this strategy and plan. And then you have the local folks with the red-green map implementing that plan and then executing it when they make the decision not to fight these fires. So that's how it flows. I'll ask this and then I'll shut up. If we decide that the decision on how to handle these two particular fires was driven by a desire to prevent these fires from interfering with private or non-federal property, and we agree with your argument about the national plan and the national strategy, aren't we obligated then to find that the discretionary function exception does insulate the government from liability because the challenged action fell within the Forest Service's discretion? If the challenged action were simply wildland, the local wildland management. If the urban part of it wasn't in there. So the national strategy on federal lands, the plan to implement that strategy on federal lands, the local green-red map for federal lands, that's all within the Forest Service's purview and authority from Congress. But when you add in that part about the urban aspect of it and how we're going to reduce fuels on other people's property as well, that's where you need some agreement from the locals. We see in the answer brief from the government, they talk about the Flame Act. Well, the Flame Act is very specific. It says that the federal authorities are given power to enter into cost-sharing agreements with state and local officials and to encourage the state and local communities to follow what they've determined to be the best practice. So it doesn't give the federal authorities the right to come in and implement what they've determined to be the best practice, but it gives them these opportunities or authorities to enter into agreements with them to try to persuade them to execute the same strategy. That's not what happened here. There's no evidence of that ever occurring. Let me put it this way. When these fires occurred, there's been a lot of discussion about how to manage fires on public lands and private lands too, because some fires have gotten much worse than in the past because there hadn't been strict fire control before then, and so you accumulated a lot of combustible material that led to very serious problems. So there was concern that maybe we need to let these fires progress a little more, maybe significantly more, to remove the combustible material. In deciding exactly how to weigh that against the need to put out a fire so it won't spread into an urban area or private land, isn't that exactly what discretionary function exception is designed to protect? A decision of that sort, and was that not the sort of decision-making going on here? Well, that was the sort of decision-making going on in Knezevich. Remember, that case just involved federal land and the reintroduction of fire as part of the ecology. This case involves both federal and private land. That's going to be true whenever something happens on federal land that spreads. If it goes far enough, it's going to hit private land. Wasn't there concern about how to deal with public land? And in this case, the decision didn't work out well and it spread far and injured private property. And I think that that's where the Rainier case comes in. These big fires that occur under a let burn policy wind up destroying private land. And the Congress has said, you know, the way Justice Black described it is like, well, maybe that's a good thing for the United States to have those big fires on private and public land. It's better off in the long run for all of us. Well, if that's the case, when there's a mistake and some individual or small group of individuals gets hurt because of it, is it fair to put the cost of these benefits for all the rest of us on this small group? And that's a very compelling argument, except that the discretionary function exception has decided how those issues have to be resolved. And it's at the expense of the private property owners and the other people who are harmed by the exercise of discretion. Isn't that the choice that was made? Well, we don't believe that's the outcome of Rainier. We believe the outcome of Rainier is what should control here is that fair public policy analysis that was adopted by the court that says that ought to happen here. Did you make that argument in the district court? Excuse me? Did you make that argument in the district court? This argument about Rainier, sort of the, what you're saying, Kniezevich didn't resolve about Rainier. Was that argument presented to the district court? I don't think we had an argument about whether Kniezevich applies. Well, not Kniezevich, but did you make a first principles argument about Rainier? And is it the same argument you're making now? We made the argument that Rainier applies to the case and should control. Okay. And we made these other arguments that we've made in this case as well, is even if it doesn't, then the discretionary function doesn't apply because there's no discretion to manage private land. And ultimately, there's no discretion to avoid NEPA analysis. Can I ask you a question about something that I found sort of curious? In the district court's order, there's a footnote where the district court said that you essentially conceded that if you couldn't prove that it was the United States intention to burn non-federally owned land, then dismissal was appropriate. And I'm trying to understand how to understand that kind of concession here on appeal. In other words, what are we to look at to discern whether the United States, in this case, on this record, whether there's an intent to even burn non-federally owned land? Is it just this urban aspect of the interface? Well, they clearly intended to burn federal land. That's where the fires were. Non-federally owned land. With respect to that, they had the red-green map. And these places that burned were within the red-green map. But it's that the United States intended, that was the intent of the action. Well, and not in the sense that they intended to go out and burn other people's property. But yes, in the sense that they wanted to reduce what they call the hazardous fuel load on everyone's property. And that's where you're, I think I now get your answer to my earlier question. So it's not the interim decision that you base the Forest Service's intent. You're basing it on the Forest Service's plan and strategy and assuming that the people that executed the red-green map on this particular occasion were following some strategy in the plan and the strategy to let fire burn onto non-federal property. Am I right? The strategy is to reduce hazardous fuels in the wildland-urban interface. And they use mechanical means, they use prescribed fire means, and they use wildland fire to do it. And if their plan is to reduce those hazardous fuels in that interface, then it has to involve private land because the urban part of it is always private. What if the plan and the strategy allowed that, but the people that were executing this plan with regard to these two particular fires decided not to allow the fire to spread onto non-federal property? Well, that would be an issue for discovery and to depose them and see what it is that they were trying to do. Well, more than that, wouldn't the discretionary function exception apply? Because the administrators of the challenged decision did have discretion to do what they did, right? If they were concerned only with federal land and not the urban aspect of the interface. So we would urge that the district court be reversed and that subject managers be found. Thank you. Good morning. Amanda Berndt on behalf of the United States. May it please the court. Appellants challenged two decisions by the Forest Service to delay full suppression of the Bald Mountain and Pool Creek wildfires. Both fires were ignited by lightning. Both occurred in remote areas of the Uinta-Wasatch-Cache National Forest. In responding to these fires, the fire managers considered a variety of factors as indicated in the relevant decisions. These include the current and predicted weather conditions, available resources, public and firefighter safety, risks to private land, and the potential that these fires could be utilized to achieve forest plan objectives. These decisions were squarely within the Forest Service's mandate to manage and protect forest system lands and were authorized by the controlling forest plan. In granting the United States motion, the district court faithfully applied the familiar two-pronged test from Berkovitz in holding that no statute, regulation, or policy specified the precise manner in which the Forest Service was required to respond to these wildfires or restricted what factors the Forest Service could or could not consider. Let me ask you two questions. First, the opposing counsel quoted some language from Regnier that he says shows that it was rejecting the discretionary function exception because the Supreme Court said there are exceptions but they don't apply here. How do you read that language in Regnier? We may be bound by whatever our case name was interpreting Regnier but assuming we can look at Regnier with fresh eyes, what was wrong with that argument? Appellant's reading of Regnier is just a misreading of that case. That case, as two other circuits in addition to this circuit have held, Regnier is not a discretionary function case and I think that's a point you raised earlier. The United States did not raise discretionary function as a defense in Regnier either below or at the Supreme Court. The issue in Regnier was the scope of the waiver of the sovereign immunity. What did the court mean when it said no other exceptions apply? I believe all that means is that no party had raised other exceptions to the FTCA so they weren't before the court properly. Regnier just simply doesn't apply here. I also think as you raised Judge Rossman, this wasn't squarely raised in the district court below. Appellant certainly cited a long segment of Regnier but he never squarely raised that issue with the district court to suggest that it controls. The other question I had is in terms of whether this decision making was within its authority, Closing Council's position seems to be that there was no authority for the Forest Service to consider the effects outside of federal land and when they included private land in the red-green map that that was outside the Forest Service authority. How do you respond to that? The red-green map, I want to be clear, doesn't suggest or even include areas where the Forest Service was considering using naturally occurring fires on private land. Those are areas within the National Forest where wildfires could be considered. He said the red-green areas encompass some private land, did they not? No, they do not. The map is certainly the wildland-urban interface includes both private and Forest Service land, but the red-green map and that you can see a depiction of that in the record at I think it's 612. It is areas in the UN2WC National Forest where wildfires would be considered for resource benefits or would be primarily suppressed. And the red areas are areas where they would likely need full suppression. If you look at that map and with an understanding of the Wasatch Front, the red areas are actually all of the areas along the Wasatch Front where that wildland-urban interface exists. Where these fires occurred is well within the green areas of the map in the Mount Nebo wilderness. It's a very remote area far from the sort of wildland-urban interface that Council's discussing now. What impact do we give to Franklin Carroll's expert testimony since we're applying the summary judgment standard? I think there's no reason to credit Mr. Carroll's testimony to the extent it conflicts with the plain language of the policies. And then with regard to his argument on NEPA as well as Mr. Redden's testimony on NEPA, because that's plainly a question of law that the District Court is empowered to look at and need not rely on expert testimony for that. So we just don't think there's a genuine issue of fact here as to whether or not the Forest Service intended to burn private land. And particularly with regard to these fires, as the District Court found, the fire managers were concerned with their reaching private land. They initially devised a response that would allow these fires to burn within confined areas of the Forest Service land, but to engage in suppression responses when it would potentially threaten private land. And then as the fires blew up and the managers lost control, the first and immediate response was to protect private land and to protect public infrastructure. So the District Court was correct in finding there was no evidence that they were intending to burn private land. Isn't that the dispositive thing in this case, that finding? Yes, we believe it is. It seems like there are several questions being presented, sort of various species of how to understand the discretionary function exception and whether the agency exceeded its statutory authority. Interesting question. Do you think we need to reach that question here if there is no evidence that the Forest Service intended to permit burns on private land? No, we don't think you need to reach that question. And that's exactly what the District Court did, found that it did not need to reach that question because there is no evidence. The forest was, the fire managers here were clearly concerned with protecting private land to the extent they could and the fact that the fire escaped their control was not their intent. So I think because, you know, as appellant concedes these are policy judgments and well within the forest's discretion, we think the District Court correctly found that the appellant's claims were barred by the discretionary function to the FTCA. I'd also think it's important that this Court recognize the parallels here between its prior decision and hardscrabble. Certainly the District Court didn't have the benefit of the Knezevich decision, but it did have hardscrabble. And in hardscrabble, this Court found that even a failure to follow a mandatory procedure, i.e. the decision checklist in that case, and here the argument appellant is making is a failure to comply with NEPA, is at most an abuse of discretion. But is the Federal Tort Claims Act an appropriate vehicle for bringing any NEPA allegations? No, it is not. How does the government understand that if that's true, and that's just law, right? That's just black letter law, obvious that it would be an APA claim. What is your understanding of the appellant's NEPA thesis here? There's two potential ways to interpret the argument. The first is, as they have argued more in this Court, that just the simple failure to comply with NEPA removed all discretion from the Forest Service in responding with anything, I believe, other than full suppression. The other argument, or the other way to interpret that is that the argument is that the failure to comply with NEPA was itself negligent. And as the District Court found, and as we've argued, that latter argument or interpretation would clearly be barred by Agronics and the private party analog, exception to the scope of the FTCA waiver. If there are no further questions... The underlying concern is private property owners suffer greatly as a result of a fire on government land. And those of us from New Mexico are very aware of that because of the terrible damage done by some probable negligence in northeast New Mexico. They are being compensated. I assume that's because of special congressional action, not because of any FTCA claims. Is that correct? I believe that's correct, Your Honor, because again... So there's nothing preventing seeking congressional action to compensate private owners. But that's generally the way we deal with the sort of destruction that occurred here. Am I correct about that, or are there any successful FTCA claims in these fire cases? I'm not aware of any successful claims under the FTCA in challenging the Forest Service's response to naturally occurring fires, particularly in this circuit, but also in the 9th Circuit and the 11th Circuit has also now considered this issue. And that's correct. There's nothing that would prohibit plaintiffs that are harmed by these actions from going to Congress. It's just that the FTCA isn't the proper vehicle. Well, the fire in New Mexico actually wasn't naturally occurring. That was an intentionally started fire to take care of debris and got out of hand. Right. And the framework for prescribed burns is a very different process, and there actually can be some mandates that the Forest Service is required to follow. And I think there's a case in Florida that has looked at that and a couple cases in the 9th Circuit. But even in the controlled burn context, if the Forest Service complies with their mandate and their procedures, their very specific procedures and mandatory directives, the courts have found that discretionary function will protect the United States from liability in those cases. Thank you, counsel. Again, if there's no further questions, we would ask that you affirm the district court in this case. Your time has expired, but I'm going to give you one minute, not one second more. If you have anything you want to respond to, you don't have to take the minute. But I'm trying to understand your claim and maybe that minute can help. Thank you, Judge Hartz. In taking that minute, a couple of things I would point to. One is with respect to Carroll and Redden's analyses of what happened, they go beyond the four corners of the documentation. They also look at what the Forest Service was doing. And the Forest Service is saying, you know, we let these fires burn and they got big. And we tried to keep them off your property, but we had no idea that they would get on your property if we let them burn. And so what the analysts looked at is not only the red-green map and how close this wildland-urban interface that the forest identified that it's trying to reduce hazardous fuels in was to those red-green interpretations, but they also looked at what the firefighters said, what they did, and how you would interpret that whole package. So they're going beyond just issues of law and onto issues of fact. Thank you. Thank you. Thank you, counsel. Case is submitted. Counselor excused.